**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. [SBN: 249203]
ak@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. [SBN: 225557]
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

**BANKRUPTCY LAW CENTER, APC**
Ahren A. Tiller, Esq. [SBN 250608]
ahren.tiller@blc-sd.com
1230 Columbia Street, Suite 1100
San Diego, CA 92101
Telephone: (619) 894-8831
Facsimile: (866) 444-7026

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

MARTIN MATANANE; and BRIDGETT WOODS, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

JEFFERSON CAPITAL SYSTEMS, LLC, d/b/a Jefferson Capital International, LLC; EDWARDS CAPITAL, LLC, d/b/a Flexpoint Ford, LLC; CL HOLDINGS, LLC; JONATHAN KIRBY; and DOES 1-50

Defendants.

Case No.: **'16CV1897 DMS MDD**

CLASS ACTION COMPLAINT FOR DAMAGES AND RESTITUTION FOR:

1.) VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT [18 U.S.C. § 1962(c)]

2.) CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT [18 U.S.C. § 1962(d)]

JURY TRIAL DEMANDED

## **INTRODUCTION**

1.     Plaintiffs, MARTIN MATANANE and BRIDGETT WOODS (hereinafter referred to collectively as "Plaintiffs") bring this class action against JEFFERSON CAPITAL SYSTEMS, LLC, d/b/a Jefferson Capital International, LLC; EDWARDS CAPITAL, LLC, d/b/a Flexpoint Ford,

LLC; CL HOLDINGS, LLC; JONATHAN KIRBY; and DOES 1-50 ("Defendants"), with respect to the unlawful, unfair, and fraudulent business practice of filing fraudulent proofs of claim and invalid proofs of claim for time-barred debts en masse in Chapter 13 bankruptcy cases throughout the United States, thereby unjustly receiving millions of dollars in payments on said invalid proofs of claim.

2.      A Chapter 13 Bankruptcy case is in essence a repayment plan, whereby an individual who files for bankruptcy (hereinafter referred to as a "debtor") pays back their creditors according to a court confirmed plan.  The debtor pays a monthly payment amount to the chapter 13 bankruptcy trustee, who then in turn takes said money and disburses it to pay allowed creditors' claims.  In a chapter 13 bankruptcy case, listed creditors are noticed by the Bankruptcy Noticing Center (BNC) upon filing.  Creditors then have until the claims bar date to file proofs of claim that serve as the basis for the amounts owed to each creditor.  The Chapter 13 Trustee will only pay creditors who file proofs of claim.  In the bankruptcy context, state law controls whether a particular claim is enforceable.  If a particular claim is unenforceable pursuant to the applicable statute of limitations or the creditor has no valid right to collect upon the underlying debt that the proof of claim is based upon, said proof of claim will be disallowed in the bankruptcy court only if an objection is filed.  A time-barred debt is not a valid claim under the bankruptcy code.

3.      The Defendants have participated in a widespread criminal conspiracy wherein they have acted in concert with one another to file en masse hundreds of thousands of proofs of claim in chapter 13 bankruptcy cases where they are not the owners of the alleged debts used as the basis for the underlying proofs of claim and/or Defendants know the underlying claims are time-barred by the applicable statute of limitations.  The Defendants have

all engaged in a fraudulent scheme under the guise of "debt buying." Actually, the Defendants are merely buying information about a debt and not legal ownership.   Furthermore, Defendants know these claims are time-barred and unenforceable under applicable state law.  In doing so, Defendants knowingly and fraudulently filed false proofs of claim and/or receive material amounts of property from debtors after the filing of a bankruptcy case, with the intent to defeat the provisions of Title 11, which constitute violations of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962 et seq.)

4.       As Judge Schmetterer of the Northern District of Illinois bankruptcy court wrote regarding this practice:

> There is likely a tendency to deceive or mislead some debtors by filing proofs of claim for stale debt.  Otherwise, there would be no point in filing them.  By definition, stale debt is debt that is no longer owed.  Debt collectors may get paid by a Chapter 13 debtor despite having no right to payment.  Claimants' own argument that creditors are "invited" to file proofs of claim shows how deception would take place.  Section 502(a) provides that a proof of claim is 'deemed allowed unless a party in interest … objects." This "clock work-mechanism" (Claimants' term) puts the burden on the debtor, the trustee, or another creditor to object.  Otherwise the trustee must pay pro rata on the claim out of debtors' plan payments according to the Chapter 13 plan.  11 U.S.C. §§ 1322(a)(3), 1326(c).  The very fact that debt collectors are systematically engaged in this practice suggests that the practice succeeds in deceiving some part of the debtor population.
>
> Debt buyers probably file proofs of claim in Chapter 13 cases because the usual allowance of many proofs of claim may result in debtors in Chapter 13 bankruptcies paying them out of future income…
>
> Because there is no good reason to allow proofs of claim for stale debt, the frequent allowance of and payment on such claims would be enough to show deception.  It would be sufficient proof to assemble a large enough representative sample of proofs of claim filed by debt collectors, isolate the proofs of claim for stale debt, and analyze that set to determine how often those proofs of claim are allowed.  That would show the rate at which courts, trustees, and debtors are deceived into paying those claims.
>
> Perhaps ...(the Claimants)… have discoverable records analyzing their success from filing proof of claims for stale debt.  It is likely that they keep a record of the proofs of stale claims they file and the success rate of those proofs of claim.

*Avalos v. LVNV Funding, LLC (In re Avalos)*, 531 B.R. 748 (Bankr. N.D. Ill. 2015).

5.      Plaintiffs make these allegations on information and belief, with the exception of those allegations that pertain to Plaintiffs, or to Plaintiffs' Counsel, which Plaintiffs allege on personal knowledge.

6.      Unless otherwise indicated, the use of any of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogates, representatives and insurers of the named Defendants.

## JURISDICTION AND VENUE

7.      Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 6, inclusive, as though fully set forth.

8.      This Court has jurisdiction over this matter pursuant to 18 U.S.C. § 1962 et seq.

9.      Defendant, EDWARDS CAPITAL, LLC, doing business as ("dba") Flexpoint Ford, LLC (hereinafter "Edwards Capital") is a foreign limited liability company organized and existing under the laws of the State of Illinois.  Edward Capital's principle office is located at 676 N Michigan Ave. Suite 3300, Chicago, IL 60611.

10.     Defendant, JEFFERSON CAPITAL SYSTEMS, LLC (hereinafter "Jefferson Capital") doing business as ("dba") Jefferson Capital International, LLC is a foreign limited liability company organized and existing under the laws of the State of Georgia.  Jefferson Capital's principle office is located at 16 McLeland Road, St. Cloud, MN, 56303.  Jefferson is a subsidiary of CL Holdings, LLC and Edwards Capital, LLC.

11.     Defendant, CL HOLDINGS, LLC (hereinafter "CL Holdings") is a foreign limited liability company organized and existing under the laws of the State of Georgia.  CL Holdings's principle office is located at 16

McLeland Road, St. Cloud, MN, 56303.   CL is a wholly owned subsidiary of Edwards Capital, LLC.

12.      Defendant, JONATHAN KIRBY (hereinafter "Mr. Kirby") is an Individual Defendant and Director of Bankruptcy Acquisitions and Servicing Operations at Jefferson Capital.  Mr.  Kirby is an individual believed to reside in Minnesota.  Mr. Kirby manages, directs, operates, supervises, and oversees the bankruptcy activities of Jefferson Capital, which is interrelated in a clandestine and complex business structure with CL Holdings and Edwards Capital.   Mr. Kirby is responsible for Jefferson Capital's bankruptcy acquisitions, analytics, and post-acquisition performance, and has led Jefferson Capital's bankruptcy operations for more than five years. Every fraudulent and time barred proof of claim filed by Jefferson Capital is personally reviewed and signed by Mr. Kirby and filed at the direction of Jefferson Capital, Edwards Capital, and CL Holdings' Officers and Directors.

13.      John Does 1-50 are the unknown co-conspirator actors, business entities, and agents in the Defendants' scheme at the time of filing.

14.      This Court has personal jurisdiction over Defendants, because Defendants conduct business in the County of San Diego, State of California. Therefore, Defendants have sufficient minimum contacts with this state, and otherwise purposely avail themselves of the markets in this state through the filing of proofs of claim in bankruptcy cases in every district in California, including the Southern District of California.  Furthermore, the conduct alleged herein in the bankruptcy cases of the named Plaintiffs occurred in the Southern District of California Bankruptcy Court.  Jurisdiction by this Court is permissible under traditional notions of fair play and substantial justice.

15.      Venue is proper in the United States District Court, Southern District of California pursuant to 28 U.S.C. §1391 and 18 U.S.C. § 1965(a) for the following reasons:

      (i)    Named Plaintiffs all reside in the County of San Diego, State of California which is within this judicial district.

      (ii)   The conduct complained of herein occurred within this judicial district as all named Plaintiffs' bankruptcy cases were filed in the County of San Diego, State of California; and

      (iii)  Defendants are subject to personal jurisdiction in this district, as they conduct business within this judicial district.

## **PARTIES**

16.     Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 15, inclusive, as though fully set forth.

17.     Plaintiffs are all, and at all times mentioned herein were, individual citizens and residents of the United States of America, State of California, County of San Diego.

18.     Defendants are a group of entities associated together for a common purpose of engaging in the filing of fraudulent time-barred proofs of claim, an act affecting interstate commerce, with the intent to knowingly and intentionally file false proofs of claim and/or misrepresent the validity of said claims and receive material amounts of property from a debtor after the filing of a bankruptcy case, with the intent to defeat the provisions of title 11, and therefore are an "Enterprise" as the term is defined by 18 U.S.C. § 1961(4).

19.     Defendants are all persons who use an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the collection of debts, or who regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another across state lines.

20.     Defendants all in the ordinary course of business, regularly, on behalf

1    of themselves, or others, engage in interstate debt collection.

2    21.    Whenever this Complaint refers to any act or acts of Defendants, the

3    reference shall also be deemed to mean the directors, officers, employees,

4    affiliates, controlling companies, or agents of the responsible Defendant who

5    authorized such acts while actively engaged in the management, direction or

6    control of the affairs of Defendants, and each of them, and/or by persons who

7    are the alter ego of Defendants, or while acting within the scope of their

8    agency, affiliation, control or employment.  Whenever this Complaint refers

9    to any act of Defendants, the reference shall be deemed to be the act of each

10   Defendant, jointly and severally.

11

12

13   **STANDING FOR PLAINTIFFS TO BRING THIS ACTION**

14   22.    Plaintiffs reallege and incorporate by reference each and every

15   allegation contained in Paragraphs 1 through 21, inclusive, as though fully set

16   forth.

17   23.    The Plaintiffs have suffered an injury in fact as a result of Defendants'

18   conduct.  As discussed below, the Defendants have unlawfully received

19   payments from the Plaintiffs' bankruptcy estates.

20   24.    11 U.S.C. §1303 states,  "[S]ubject to any limitations on a trustee

21   under this chapter, the debtor shall have, exclusive of the trustee, the rights

22   and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and

23   363(i), of this title."  11 U.S.C. §363 confers on the trustee the right to

24   exercise control over estate property.

25   25.    Pursuant to 11 U.S.C. §1306, Plaintiffs shall remain in possession of

26   all estate property.  In the Chapter 13 context, the Debtor has exclusive rights

27   to control estate property, and therefore the Plaintiffs have the right to

28   prosecute these claims against Defendants on behalf of themselves and other

similarly situated individual members of the Class even if they were to be deemed "estate property."

26.     Furthermore, all of the Plaintiffs' chapter 13 plans have been confirmed.  Pursuant to 11 U.S.C. § 1327, confirmation of the plan vests all of the property of the estate in the debtor.  Therefore, the Plaintiffs' claims against the Defendants are theirs to prosecute free and clear of the chapter 13 trustee and/or creditors.   Thus, Plaintiffs have standing to bring these claims.

## GENERAL ALLEGATIONS

### *Relationships between Defendants*

27.     Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 26, inclusive, as though fully set forth.

28.     Edwards Capital, LLC is a private equity company that owns over 26 subsidiary entities.  Jefferson Capital and CL Holdings are wholly-owned subsidiaries of Edwards Capital.

29.     Jefferson Capital purchases and owns delinquent debts (they are one of the largest debt purchasers in the United States).  Jefferson Capital is the debt collector that Edwards Capital and CL Holdings uses to service and collect on its bankruptcy debt portfolios.  Edwards Capital (d/b/a FlexPoint Ford, LLC) is the parent company overseeing this "Enterprise."  Edwards Capital uses its subsidiaries to perpetuate their massive scheme to defraud hundreds of thousands of bankruptcy debtors into paying on fraudulent and/or time-barred invalid proofs of claims in bankruptcy cases throughout the United States.  This scheme to defraud individuals in bankruptcy has created a massive windfall of ill-gotten gains for this aforementioned Enterprise.

30.     Mr. Kirby manages, directs, operates, supervises, and oversees the

bankruptcy activities of Jefferson Capital, which is interrelated in a clandestine and complex business structure with CL Holdings and Edwards Capital.   In concert with the Directors of CL Holdings, Edwards Capital and Jefferson Capital, Mr. Kirby and the other Defendants have met on multiple occasions and colluded together to perpetuate this scheme to defraud vulnerable bankruptcy debtors out of millions of dollars through this nationwide scheme.

31.       Edwards Capital and CL Holdings uses Jefferson Capital to service and collect on delinquent debts purchased on behalf of the Enterprise.

32.       Defendants all are engaged in the collection of delinquent debts.  Their business practices exposes them to risks of liability for failing to comply with applicable debt collection, consumer protection, and credit reporting statutory requirements.  To insulate their risk, Defendants have colluded together to segregate operations among multiple layers of entities that work in conjunction with one another all being directed by the parent company Edwards Capital.  The compartmentalization of these different entities was set up to shield the Defendants from liability, confuse investigative agencies, and further perpetuate the Enterprise's unlawful goals.


### *Predicate Acts Involving Plaintiff Bridgett Woods*

Violations of 18 U.S.C. §152(4)&(5)
[Fraud Connected to Bankruptcy - 18 U.S.C. 1961(1)(D)]

33.       Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 32, inclusive, as though fully set forth.

34.       On March 31, 2014, Plaintiff, Bridgett Woods filed a joint (with her spouse) Chapter 13 bankruptcy case in the United States Bankruptcy Court

1    for the Southern District of California with case number 14-02497-MM13.

2    35.     Plaintiff, Bridgett Woods' Chapter 13 plan was confirmed on August

3    28, 2014.

4    36.     On May 7, 2014, Defendant, Jefferson Capital Systems, LLC filed a

5    proof of claim, marked as Proof of Claim # 8-1 on behalf of Defendant,

6    Jefferson Capital, in Plaintiff, Bridgett Woods' Chapter 13 bankruptcy case

7    (Case No. 14-02497-MM13).  Defendant, Mr. Kirby signed and filed the

8    proof of claim on behalf of Defendant, Jefferson Capital.

9    37.     Proof of claim # 8-1 provided for a claim in the amount of $2,986.17,

10    and listed the current owner and creditor as Plaintiff, Jefferson Capital

11    Systems, LLC, the original creditor as Citibank Visa., provided that

12    Defendant, Jefferson Capital was the agent where notices and payments

13    should be sent, and provided Defendant, Jefferson Capital and CL Holding's

14    joint address in Saint Cloud, MN 56302-9617 as the address where payments

15    should be sent.

16    38.     The last payment on the debt used as the basis for proof of claim # 8-1

17    was May 18, 1992.  Therefore, the last payment received on the debt used as

18    the basis for proof of claim # 8-1 in Bridgett Woods' bankruptcy case was

19    over Twenty-One (21) years prior to the filing of her bankruptcy case.

20    39.     From May 21, 2015, through April 21, 2016, the Chapter 13 Trustee,

21    Thomas Billingslea took the Debtor's funds on hand with the Chapter 13

22    Trustee and distributed nine (9) installment payments to Jefferson Capital to

23    pay Proof of Claim # 8-1 filed in Mrs. Woods' Bankruptcy case (Case No.

24    14-02497-MM13).  The total payments made to Defendants over the period

25    from May 21, 2015 through June 16, 2016 was $266.20.   The payments are

26    still ongoing, and without court intervention Defendants will continue to

27    receive future installment payments.

28

40.     To date, the Defendants have unjustly received $266.20 in payments on this extremely time-barred and fraudulent Proof of Claim filed in Bridgett Woods' Bankruptcy case (Case No. 14-02497-MM13).

41.     The underlying debt supporting proof of claim # 8-1was never reduced to judgment prior to Mrs. Woods filing her bankruptcy case, and Plaintiff never made a payment on this alleged claim within the 4 year period prior to filing bankruptcy.

42.     Further, Defendants never acquired a valid right to collect upon the debt used to form the basis for proof of claim # 8-1, as they are not the valid owners or assignees of said claim.   The alleged debt used to form the basis of proof of claim 8-1 was originally a Citibank Visa credit account, which was charged off by the original creditor on October 23, 1992.   After the debt was charged off, Mrs. Woods' information, and not a right to collect, was sold to multiple debt collection agencies such as Fourscore Resource Capital, LLC, then allegedly Pinnacle Credit Services, LLC as well as many other entities over the last 23 years.   The Defendants never in fact acquired any valid right to collect upon this debt, yet in fact merely filed the claim based upon credit reporting information they obtained regarding Mrs. Woods, which included her name, social security number, payment history, and an amount allegedly owed to Citibank Visa.   Defendants filed said proof of claim based upon information they obtained from third party entities that contained Mrs. Woods' identifying information, yet never in fact acquired any right to collect upon this debt.

43.     The Defendants knew they were not valid owners and/or Assignees of the underlying claim # 8-1, therefore Defendants knowingly and intentionally presented a false claim for proof against the estate of Plaintiff, Bridgett Woods in her Chapter 13 Bankruptcy case (Case No. 14-02497-MM13).

44.     Furthermore, Defendants knew they were not entitled to payment on the underlying time-barred debt, as Defendants were clearly time-barred from collecting on Proof of Claim # 8-1 under California Civil Code section 337, therefore Defendants knowingly and intentionally received material amounts of property from Plaintiff, Bridgett Woods' bankruptcy estate after the filing of her bankruptcy case, with the intent to defeat the provisions of the bankruptcy code by filing and receiving payment on said time-barred claim.

### *Predicate Acts Involving Plaintiff Martin Matanane*

Violations of 18 U.S.C. §152(4)&(5)
[Fraud Connected to Bankruptcy - 18 U.S.C. 1961(1)(D)]

45.     Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 44, inclusive, as though fully set forth.

46.     On January 31, 2013, Plaintiff Martin Matanane filed a Chapter 13 bankruptcy case in the United States Bankruptcy Court for the Southern District of California with case number 13-00986-MM13.

47.     On March 9, 2013, Defendant, Jefferson Capital filed a proof of claim, marked as Proof of Claim # 10-1 in Plaintiffs, Martin Matanane and Giana Matanane's Chapter 13 bankruptcy case (Case No. 13-00986-MM13). Defendant, Mr. Kirby signed the proof of claim on behalf of Defendant, Jefferson Capital.

48.     Proof of claim # 10-1 provided for a claim in the amount of $315.00, and listed the current owner and creditor as Jefferson Capital, the original creditor as Advance America, and provided that Defendant, Jefferson Capital was the agent where notices and payments should be sent, and

provided Defendant, Jefferson Capital's address in Saint Cloud, MN 56302-9617.

49.      The last payment made on the account used as the basis for Proof of claim # 10-1, was July 16, 2008.

50.      The last payment received on these alleged debts were over 4 years prior to the filing of Mr. Matanane's bankruptcy case.  The debt used as the basis for proof of claim # 10-1 had been time barred from collection by California's statute of limitations (CCP § 337).

51.      Defendant, Jefferson Capital is not the valid owner and/or assignee of the underlying claim used as the basis for filing Proof of Claim # 10-1. Defendants allegedly purchased the claim from Cascade Capital, LLC who purchased the claim from an intermediary debt collector who purchased the claim from Advance America, however Defendants merely obtained identifiable information regarding the alleged debt, yet never obtained legal ownership of said claims.

52.      On May 14, 2013, Defendant, Jefferson Capital filed a proof of claim, marked as Proof of Claim # 12-1 in Plaintiff Martin Matanane's Chapter 13 bankruptcy case (Case No. 13-00986-MM13). Defendant, Mr. Kirby signed and filed the proof of claim on behalf of Defendant, Jefferson Capital.

53.      Proof of claim # 12-1 provided for a claim in the amount of $118.39, and listed the current owner and creditor as Jefferson Capital, the original creditor as Wells Fargo Bank, and provided that Defendant, Jefferson Capital was the agent where notices and payments should be sent, and provided Defendant, Jefferson Capital and CL Holding's address in Saint Cloud, MN 56302-9617 as the address where payments should be sent.

54.      The last payment made on the account used as the basis for Proof of claim # 12-1, was January 23, 2008.

55.     The last payment received on the alleged debt used to form the basis of proof of claim # 12-1 was over 5 years prior to the filing of Mr. Matanane's bankruptcy case.  Therefore, the debt used as the basis for proof of claim # 12-1 was time barred from collection pursuant to California's statute of limitations (CCP § 337).

56.     Defendant, Jefferson Capital is not the valid owner and/or assignee of the underlying claim used as the basis for filing Proof of Claim # 12-1. Defendants allegedly purchased the claim from RJM Acquisitions, LLC who purchased the claim from an intermediary debt collector who purchased the claim from Wells Fargo Bank, however Defendants never purchased legal ownership of said claim.   The Defendants never in fact acquired any valid right to collect upon this debt, yet in fact merely obtained information from third parties, which contained Mr. Matanane's name, social security number, payment history, and an amount allegedly owed to the original creditor, Wells Fargo.

57.     On May 21, 2013, Defendant, Jefferson Capital filed another proof of claim, marked as Proof of Claim # 13-1 in Plaintiff Martin Matanane's Chapter 13 bankruptcy case (Case No. 13-00986-MM13).  Defendant, Mr. Kirby signed the proof of claim on behalf of Defendant, Jefferson Capital.

58.     Proof of claim # 13-1 provided for a claim in the amount of $857.40, and listed the current owner and creditor as Jefferson Capital, the original creditor as Orchard Bank / Household Bank, and provided that Defendant, Jefferson Capital was the agent where notices and payments should be sent, and provided Defendant, Jefferson Capital and CL Holding's address in Saint Cloud, MN 56302-9617 as the location where payments should be sent.

59.     The last payment made on the account used as the basis for Proof of claim # 13-1, was April 30, 2003.

60.     The last payment received on the alleged debt used to form the basis of proof of claim # 13-1 was over nine (9) years prior to the filing of Mr. Matanane's bankruptcy case.  The debt used as the basis for proof of claim # 13-1,  was therefore time barred from collection pursuant to California's statute of limitations (CCP § 337).

61.     Defendant, Jefferson Capital is not the valid owner and/or assignee of the underlying claim used as the basis for filing Proof of Claim # 13-1. Defendants allegedly purchased the claim from International Collection Services who purchased the claim from an intermediary debt collector who purchased the claim from Orchard Bank / Household Bank, however Defendants merely acquired information regarding the alleged debts, yet never purchased legal ownership of said claim.   The Defendants never in fact acquired any valid right to collect upon this debt, yet in fact merely acquired from a third party and credit reporting information containing Mr. Matanane's name, social security number, payment history, and an amount allegedly owed to the original creditor, Orchard Bank / Household Bank.

62.     On March 29, 2013, Plaintiff Martin Matanane's Chapter 13 plan was confirmed.  The confirmed Chapter 13 plan provided for payment of 100% of all allowed general unsecured claims.   Since, Plaintiff Mr. Matanane's Chapter 13 plan need to pay a 100% dividend to unsecured claims, had Defendants not filed the aforementioned invalid and fraudulent claims, Mr. Matanane's plan payment would have been reduced and the overall amount he needed to pay into the chapter 13 plan would have been reduced as well.

63.      From April 10, 2014, through July 12, 2016, the Chapter 13 Trustee, David L. Skelton took the Debtor's funds on hand with the Chapter 13 Trustee and distributed nine (9) installment payments to Jefferson Capital to pay Proof of Claim # 10-1 filed in Mr. and Mrs. Matanane's Bankruptcy case (Case No. 13-00986-MM13).  The total payments made to Defendants

over the period from April 2014 to July 2016 was $172.02. The payments are still ongoing, and without court intervention Defendants will continue to receive future installment payments until the entire claim # 10-1 is paid in full.

64. From September 10, 2014, through July 12, 2016, the Chapter 13 Trustee, David L. Skelton took the Debtor's funds on hand with the Chapter 13 Trustee and distributed four (4) separate installment payments to Jefferson Capital to pay Proof of Claim # 12-1 filed in Mr. Matanane's Bankruptcy case (Case No. 13-00986-MM13). The total payments made to Defendants over the period from September 10, 2014, through July 12, 2016 was $64.66. The payments are still ongoing, and without court intervention Defendants will continue to receive future installment payments until the entire claim # 12-1 is paid in full.

65. From March 11, 2014, through July 12, 2016, the Chapter 13 Trustee, David L. Skelton took the Debtor's funds on hand with the Chapter 13 Trustee and distributed twenty-three (23) monthly installment payments to Jefferson Capital to pay Proof of Claim # 13-1 filed in Mr. Matanane's Bankruptcy case (Case No. 13-00986-MM13). The total payments made to Defendants over those 23 installments was $468.16. The payments are still ongoing, and without court intervention Defendants will continue to receive monthly payments until the entire claim #13-1 is paid in full.

66. To date, the Defendants have unjustly received $704.84 in payments on Proofs of Claim # 10-1; 12-1; and 13-1 filed in Plaintiff Martin Matanane's Bankruptcy case (Case No. 13-00986-MM13) (See ¶¶ 63-65).

67. The underlying debt supporting proofs of claim # 10-1, # 12-1, and # 13-1 filed in Plaintiff Martin Matanane's bankruptcy case were never reduced to judgment prior to the filing their bankruptcy case, and Plaintiff

Martin Matanane never made any subsequent payments on these alleged claims.

68.     The Defendants knew they were not the valid owners of the underlying debts, therefore Defendants knowingly and intentionally presented a false claim for proof (Proofs of Claim # 10-1, 12-1 and # 13-1) against the estate of Plaintiff Martin Matanane's Chapter 13 Bankruptcy case.

69.     Furthermore, Defendants knew they were not entitled to payment on these time-barred debts, therefore Defendants knowingly and intentionally received material amounts of property from Plaintiff Martin Matanane's bankruptcy estate, after the filing of his bankruptcy case, with the intent to defeat the provisions of the bankruptcy code by filing and receiving payments on proofs of claim # 10-1, # 12-1 and # 13-1.

### General Facts Relating to Plaintiffs' Claims

70.     Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 69, inclusive, as though fully set forth.

71.     In the bankruptcy context, applicable state law controls whether a particular underlying claim is enforceable and eligible for payment through the Chapter 13 plan.

72.     Pursuant to California's Statute of Limitations, Cal. Code Civ. Proc. §337, the debt underlying the proofs of claim of Bridgett Woods and Martin Matanane were time-barred and not valid claims pursuant to California's applicable statute of limitations at the time of the bankruptcy filing and at the time the proofs of claim were filed.

73.     The bankruptcy code provides for Debtors to be able to object to a proof of claim, although the costs of preparing and filing the objection are borne by the Debtors / Plaintiffs.

74.     The Plaintiffs and other similarly situated bankruptcy debtors must pay an attorney to object to these time-barred claims, otherwise they are allowed. Therefore, the amount of these time barred claims provides a strong disincentive to other similar situated bankruptcy debtors (including the Plaintiffs) to object to the claims where the amount to be paid to the creditor is less than what an attorney would charge to file an objection to said claim.

75.     Furthermore, since the Plaintiffs and other similarly situated bankruptcy debtors must take the initial action to object to the time-barred and/or false proofs of claim, and the Defendants file massive amounts of these proofs of claim en masse, the Defendants are fully aware that a majority of Bankruptcy Debtors and their attorneys will not discover the fraudulent nature a majority of these proofs of claims and therefore fail to object to a large percentage of them. This allows Defendants to be unjustly enriched by receiving payments from hundreds of thousands of similarly situated bankruptcy debtors on these invalid filed proofs of claim that Plaintiffs fraudulently file en masse.

76.     Jefferson Capital, CL Holdings, and Edwards Capital are not the valid owners of the debts used as the basis for the proofs of claim filed in the Plaintiffs' and other similarly situated individuals' bankruptcy cases. Defendants had no right to be paid for Proof of claim # 8-1, filed in Bridgett Woods' bankruptcy case, and Proofs of Claim # 12-1, and 13-1 filed in Martin Mantane's bankruptcy case.   The basis of these proofs of claim filed in Plaintiffs' bankruptcy cases were debts allegedly owed to CitiBank Visa, Wells Fargo Bank, and Orchard Bank / Household Bank respectively.  These proofs of claim were fraudulent as neither Jefferson Capital, CL Holdings, nor Edwards Capital are the valid owners or assignees of the underlying claims.

77.     Furthermore, Defendants knew they filed the aforementioned proofs of

claim based upon time-barred debts.  Defendants are some of the largest and most sophisticated debt collectors in the nation, and hold some of the largest portfolios of claims in bankruptcy.  Therefore, the Defendants knew of the applicable statute of limitations and intentionally attempted to be paid on these invalid time-barred claims with the intent to defeat the provisions of the bankruptcy code.

78.	Defendants knowingly sought out and accepted payment on fraudulent and time-barred claims through the Plaintiffs' and other similarly situated individuals' Chapter 13 bankruptcy cases.

79.	During the "Class Period," as defined below, Defendants continuously over a consistent period of time filed hundreds of thousands of time-barred proofs of claim and received payment on said time-barred claims in violation of the applicable law in many other similarly situated consumer debtors' Chapter 13 bankruptcy cases throughout the United States.

80.	Defendants are aware that it is usually not economically feasible for most consumer Chapter 13 bankruptcy debtors to prepare and file such objections to these fraudulent proofs of claim, especially where the amount to be paid to the Creditor is less than the attorney's fees required to object to the proof of claim.

81.	Defendants knew the Plaintiffs and hundreds of thousands of other similarly situated bankruptcy debtors would not object to these fraudulent and time-barred claims, thus Edwards Capital has worked with its subsidiaries and Corporate Officers and personnel to form a RICO Enterprise consisting of the named Defendants to intentionally file these invalid proofs of claims en masse to unjustly receive material amounts of payments from the property of thousands of bankruptcy debtors throughout the United States, with the intent to defeat the provisions of the bankruptcy code.

82.     Defendants are aware that time-barred proofs of claim are unlikely to be objected to as it is often not economically feasible to do so.  Upon information and belief, Edwards Capital, CL Holdings, Jefferson Capital and Jonathan Kirby have analyzed statistics regarding the rate of payment on time-barred claims and have concluded that although the claims are not lawfully entitled to payment, they often will still receive payment as a result of the economically unfeasible procedures in the bankruptcy proof of claim system.   Acting with this knowledge, Edwards Capital and the other named Defendants have created an Enterprise and a system by which to work together to file hundreds of thousands of small time-barred proofs of claim in bankruptcy cases, and in doing so accept multi-million dollars in payments in aggregate on these fraudulent and/or invalid time-barred claims.

83.     Defendants have conspired together to file in concert time-barred proofs of claim with the intent to knowingly and intentionally misrepresent the validity of said claims and receive material amounts of property from a debtor after the filing of a bankruptcy case, with intent to defeat the provisions of title 11 of the U.S. Code.

84.     Defendants are relying on unlawful and fraudulent business practices to accept relatively small payments on a large scale in order to reap a significant financial windfall on claims that Defendants would not have been able to collect upon, but for the Enterprise's deceptive fraudulent business practices.

85.     Plaintiffs suffered injuries in fact and lost money as a result of Defendants' unlawful and fraudulent business practices alleged herein.

## CLASS ACTION ALLEGATIONS

86.     Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 85, inclusive, as though fully set forth.

87.     Plaintiffs and the members of the Class have all suffered injury in fact as a result of the Defendants' unlawful conduct.

88.     The "Class Period" means 48 months prior to the filing of the Complaint in this action.

89.     Plaintiffs bring this lawsuit on behalf of themselves and other Chapter 13 Debtors similarly situated under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedures.  Subject to additional information obtained through further investigation and/or discovery, the proposed nationwide class ("Class") seeking certification of claims for declaratory and injunctive relief, and for damages pursuant to 18 U.S.C. § 1962(d) for conspiracy to violate 18 U.S.C. § 1962(c), and for violating 18 U.S.C. § 1962(c), consists of:

> All persons who filed a Chapter 13 bankruptcy case in the United States, where one or more of the named defendants filed a proof of claim for a claim that Defendants were not the valid owners of and/or the proof of claim was time-barred at the time the case was filed, and Defendants received payment from the Chapter 13 Trustee on that proof of claim within 48 months prior to the filing of the Complaint in this action.

90.     Excluded from the Class are the named Defendants, and any of their respective officers, directors, employees, or agents.  Plaintiffs reserve the right to modify or amend the Class definition before the Court determines whether certification is appropriate.

91.     *Ascertainability*.  The members of the Class are readily ascertainable from Defendants' records and/or Defendants' agents' records regarding

bankruptcy cases within the Class Period where Defendants have filed a proof of claim and received payment on a fraudulent and/or time-barred claim.  Alternatively, the members of the Class are readily ascertainable by searching and reviewing the PACER (Public Access to Court Electronic Records) website for publicly-available proofs of claim filed by Defendants during the Class Period, and payment histories readily ascertainable from the Chapter 13 Trustee's publicly-available websites.  Furthermore, the majority of Debtors are represented by attorneys in their bankruptcy cases and/or the Debtors' mailing addresses are listed on the first page of their publicly available bankruptcy petitions.

92.     ***Numerosity***.  The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that the proposed class consists of over a hundred thousand members.

93.     ***Existence and Predominance of Common Questions of Law and Fact***.  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  All members of the Class have been subject to the same conduct and their claims are based on the widespread filing of fraudulent, time-barred and unlawful proofs of claim in Chapter 13 bankruptcy cases.  The common legal and factual questions include, but are not limited to, the following:

    a.  Whether Defendants routinely file proofs of claim in Chapter 13 bankruptcy cases on statutorily time-barred debts;

    b.  Whether Defendants routinely file proofs of claim in Chapter 13 bankruptcy cases on debts that they have no legal right to collect upon;

    c.  Whether Defendants knowingly and intentionally filed proofs of claim in Chapter 13 bankruptcy cases, because it is economically infeasible

for most Debtors to object to relatively small claims on an individual basis, and by filing said proofs of claim en masse, Defendants have enriched themselves through willful violations of the law;

d. Whether Defendants acted intentionally to enrich themselves by filing time-barred proofs of claim in Chapter 13 bankruptcy cases;

e. Whether Defendants, through their conduct, received money that, in equity and good conscience, belongs to Plaintiffs and other members of the Class;

f. Whether the Defendants are an "enterprise" as defined under 18 U.S.C. § 1961(4);

g. Whether the Defendants' filing of time-barred and fraudulent proofs of claim in bankruptcy cases are an activity which affects interstate or foreign commerce;

h. Whether the Defendants are engaged in a "pattern of racketeering activity" as defined under 18 U.S.C. § 1961(5);

i. Whether the Defendants filing of time-barred and invalid proofs of claim and receiving payments from bankruptcy trustees upon said time barred claims in bankruptcy cases is a "racketeering activity," as defined under 18 U.S.C. § 1961(1)(D) and 18 U.S.C. § 152(5);

j. Whether the filings of Proofs of Claims by Defendants where they misrepresented their ownership of the subject claim in bankruptcy cases is a "racketeering activity," as defined under 18 U.S.C. § 1961(1)(D) and 18 U.S.C. § 152(4);

k. Whether the Defendants' racketeering activities were a proximate cause of the injuries to the Plaintiffs and the proposed members of the Class; and

l. Whether Plaintiffs and proposed members of the Class are entitled to actual damages, including but not limited to restitution and/or

1    disgorgement.

2

3

4    94.    *Typicality*.  Plaintiffs' claims are typical of the claims of the members

5    of the Class in that Plaintiffs are members of the Class that Plaintiffs seek to

6    represent.  Plaintiffs, like members of the proposed Class, had monies paid

7    into their Chapter 13 bankruptcy plans paid out to Defendants for proofs of

8    claim predicated on debts not owed to the Defendants and/or based upon

9    uncollectable time-barred debts.  Plaintiffs are advancing the same claims

10   and legal theories on behalf of themselves and all absent members of the

11   Class.  Defendants have no defenses unique to the named Plaintiffs.

12   95.    *Adequacy of Representation*.  Plaintiffs will fairly and adequately

13   protect the interests of the members of the Class.  Plaintiffs have retained

14   counsel experienced in bankruptcy law and consumer protection law,

15   including class actions.  Plaintiffs have no adverse or antagonistic interests to

16   those of the Class, and will fairly and adequately protect the interests of the

17   Class.  Plaintiffs' attorneys are aware of no interests adverse or antagonistic

18   to those of the Plaintiffs and the proposed Class.

19   96.    *Superiority*.  A class action is superior to all other available means for

20   the fair and efficient adjudication of this controversy.  Individualized

21   litigation would create the danger of inconsistent and/or contradictory

22   judgments arising from the same set of facts.  Individualized litigation would

23   also increase the delay and expense to all parties and the courts and the issues

24   raised by this action.  The damages or other financial detriment suffered by

25   individual Class members may be relatively small compared to the burden

26   and expense that would be entailed by individual litigation of the claims

27   against the Defendants.  The injury suffered by each individual member of

28   the proposed class is relatively small in comparison to the burden and

expense of individual prosecution of the complex and extensive litigation necessitated by the Defendants' conduct.  It would be virtually impossible for members of the proposed Class to individually redress effectively the wrongs to them.  Even if the members of the proposed Class could afford such litigation, the Court system could not.  Individualized litigation increases the delay and expense to all parties, and to the court system presented with the complex legal and factual issues of this case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.  Therefore, a class action is maintainable pursuant to Fed. R. Civ. P. 23(b)(3).

97.      Unless the Class is certified, Defendants will retain monies received as a result of Defendants' unlawful and fraudulent conduct alleged herein. Unless a judgment is issued, Defendants will also likely continue to file proofs of claim on time-barred debts and debts they do not in fact own the rights to receive payments on, and thus continue to unjustly collect payments on those invalid claims in violation of the law.

98.      Furthermore, Defendants have acted or refused to act on grounds that are generally applicable to the Class so that declaratory and injunctive relief is appropriate to the Class as a whole, making class certification appropriate pursuant to Fed R. Civ. P. 23(b)(2).

# **FIRST CAUSE OF ACTION**

### **VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT [18 U.S.C. § 1962(c)]**

[AS T0 JEFFERSON CAPITAL SYSTEMS, LLC; AND JONATHAN KIRBY; ONLY]

99.     Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 98, inclusive, as though fully set forth.

100.     Jefferson Capital, and Jonathan Kirby violated the Federal RICO statute and Plaintiffs were injured as a result.

### *Persons*

101.     Each Defendant is an entity capable of holding legal or beneficial interest in property and therefore a "person" within the meaning of 18 U.S.C. § 1961(3).

### *Enterprise*

102.     Defendants together form an association-in-fact for the common and continuing purpose described herein and constitute an enterprise within the meaning of 18 U.S.C. § 1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activity.  The members of the enterprise function as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity. There may also be other members of the enterprise who are unknown at this time.

103.        Defendants are all part of an association-in-fact that jointly works to achieve their common purpose of filing time-barred proofs of claim and/or fraudulent proofs of claim in bankruptcy cases and obtaining payments on those claims.  Edwards Capital has organized together different subsidiaries and Corporate Officers to perform different functions of the racketeering activity.  Defendant, Jefferson Capital collects on behalf of Defendants, Edward Capital and CL Holdings.  All the monies received from the Chapter 13 Trustees as result of the racketeering activities are sent to Defendant, Jefferson Capital's and Defendant, CL Holdings' office in St. Louis, Missouri for payment processing.   Defendant, Jonathan Kirby with the assistance of David Burton, Chief Executive Officer of Jefferson Capital, oversees and prepares fraudulent and time-barred claims to unjustly enrich the Enterprise with property of the Plaintiffs and others similarly situated. Therefore, the Defendants' association constitutes an enterprise as that term is defined under 18 U.S.C. § 1961(4).

### *Defendants Engaged in and Affected Interstate Commerce*

104.        Defendants engaged in and affected interstate commerce by electronically filing proofs of claim in bankruptcy courts throughout the United States.

105.        Defendants also engaged in and affected interstate commerce by filing proofs of claim by U.S. Mail in bankruptcy courts throughout the United States.

106.     Defendants engaged in and affected interstate commerce by accepting payments through the mail from bankruptcy Trustees throughout the United States.

107.     Defendants engaged in and affected interstate commerce by operating

portions of their enterprise in various different states and engaging in interstate debt collection.

### *Pattern of Conduct or Participation*

108.     Defendants have continuously filed hundreds of thousands of time-barred proofs of claim in bankruptcy cases throughout the country (including the Southern District of the State of California), and received payments for said Proofs of Claim continuously over the last four years.

109.     On May 9, 2013, Defendants, Jefferson Capital and Jonathan Kirby filed a proof of claim, marked as Proof of Claim # 10-1 in Plaintiffs, Martin Matanane's Chapter 13 bankruptcy case and as a result unjustly received $172.02 in payments on said fraudulent and time-barred claim (Case No. 13-00986-MM13).

110.     On May 14, 2013, Defendants, Jefferson Capital and Jonathan Kirby filed a proof of claim, marked as Proof of Claim # 12-1 in Plaintiffs, Martin Matanane's Chapter 13 bankruptcy case and as a result unjustly received $64.66 in payments on said fraudulent and time-barred claim (Case No. 13-00986-MM13).

111.     On May 21, 2013, Defendants, Jefferson Capital and Jonathan Kirby filed a proof of claim, marked as Proof of Claim # 13-1 in Plaintiffs, Martin Matanane and Giana Matanane's Chapter 13 bankruptcy case and as a result unjustly received $468.16 in payments on said fraudulent and time-barred claim (Case No. 13-00986-MM13).

112.     On May 7, 2014, Defendants, Jefferson Capital and Jonathan Kirby filed Proof of Claim # 8-1 on behalf of the enterprise in Plaintiff, Bridgett Woods' Bankruptcy case and as a result Defendants unjustly received $266.20 in payments on Proof of Claim # 8-1 (Case No. 14-02497-MM13).

113.     Further, Defendants have repeatedly over a course of extended period

of time filed hundreds of thousands of fraudulent and time-barred proofs of claim and received payments as a result, from the Plaintiffs' and other similarly situated individuals' bankruptcy estates.

114.   As laid out above, all proofs of claim were filed after October 15, 1970, and the last proof of claim was filed within two years of the previous proofs of claim.

115.   In fact, each Defendant has committed or aided and abetted in the commission of thousands of acts of racketeering activity over the last four years.  Each act of racketeering activity was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results and impacted similar victims, including Plaintiffs and the other similarly situated class members.

116.   The majority of the proofs of claim filed by Defendants are based upon time-barred debts and/or claims that Defendants had no right to payment upon.  They have demonstrated a pattern of filing proofs of claims in hundreds of thousands of chapter 13 bankruptcy cases throughout the United States, wherein a majority of said claims are invalid and they had no right to collect upon them.

117.   The multiple acts of racketeering activity which Defendants committed or aided and abetted in the commission of, were related to each other and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of "racketeering activity" as defined in 18 U.S.C. § 1961(5).

*Racketeering Activities*

[18 U.S.C. § 1961(1)(D)]

Violations of 18 U.S.C. § 152(4)

118.   The Plaintiffs' bankruptcy proceedings had been commenced prior to Defendants' filing the aforementioned proofs of claim.

119.   The Defendants presented or caused to be presented a proof of claim in the bankruptcy cases of Plaintiffs.

120.   The proofs of claim filed by Defendants in Plaintiffs' bankruptcy cases were false as to a material matter; and the Defendants knew the proofs of claim were false and acted knowingly and fraudulently when they filed said proofs of the claim.

121.   The Defendants were not the valid owners of the alleged debts used to form the basis of Proofs of Claim filed in Plaintiffs' cases, therefore Defendants knowingly and fraudulently presented a false claim for proof against the estate of the Plaintiffs in violation of 18 U.S.C. § 152(4).

122.   The underlying debts used to form the basis of Defendants' proofs of claim filed in Plaintiffs' bankruptcy cases were sold multiple times to debt collectors and the Defendants never in fact purchased the legal rights to collect upon the debts, yet rather merely filed the proofs of claim by obtaining identifiable information regarding the underlying claims.

123.   But for Defendants' violations of 18 U.S.C. §152(4) Plaintiffs and others similarly situated would not have been deprived of the funds paid to Defendants.

124.   Therefore, Plaintiffs and the Class members have suffered compensable injury proximately caused by the Defendants' violations of 18 U.S.C. §152(4).

*Racketeering Activities*

[18 U.S.C. § 1961(1)(D)]

Violations of 18 U.S.C. § 152(5)

125.     The amount of funds paid to Defendants by the Bankruptcy Trustee on behalf of the Plaintiffs were material amounts as that term is defined in 18 U.S.C. §152(5).

126.     Defendants' practice of pursuing payments en masse on time-barred debts by filing proofs of claim in Chapter 13 bankruptcy cases where it is financially unfeasible for Debtors to incur attorney's fees to object to the claims despite the claims being invalid, unjustly enriched Defendants.

127.     Defendants possessed the specific intent to defeat the provisions of title 11 (i.e. bankruptcy code), when they filed these proofs of claim causing the Plaintiffs to pay the Defendants material amounts of money.

128.     By knowingly filing claims on time-barred debts wherein they would receive payment on claims that Defendants had no basis for payment under the bankruptcy code, the Defendants intended to defeat the provisions of Title 11, therefore Defendants violated 18 U.S.C. §152(5).

129.     Furthermore, by knowingly operating a scheme to obtain payment on claims for which the Defendants were not the valid owners of the claim under Title 11, and then receiving payment on those claims, Defendants violated 18 U.S.C. §152(5).

130.     But for Defendants' violations of 18 U.S.C. §152(5), Plaintiffs and others similarly situated would not have been deprived of the funds paid to Defendants.

131.     Therefore, Plaintiffs and members of the Class have suffered compensable injury proximately caused by Defendants' violations of 18 U.S.C. §152(5).

*Racketeering Activities*

18 U.S.C. 1961(1)(D)

Fraud involving a Case under Title 11

132.     Defendants' violations of 18 U.S.C. § 152(4) and § 152(5) are offenses involving fraud connected with a case under title 11 and thus "Racketeering Activities" within the meaning of 18 U.S.C. § 1961(1)(D).

133.     Defendants, each of whom are persons associated with the enterprise, did knowingly, willfully and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(D), 1961(5), and 1962(c). The Racketeering Activity was made possible by Defendants' regular and repeated use of the facilities and services of the enterprise. Defendants had the specific intent to engage in the substantive RICO violation alleged herein.

134.     Defendants committed multiple false misrepresentations of material fact regarding the validity of the claims when they prepared and filed multiple proofs of claim in Plaintiffs' bankruptcy cases.

135.     The act of preparing and filing a proof of claim in Plaintiffs' bankruptcy cases were misrepresentations that the Defendants possessed valid claims that they had a right to collect upon.

136.     The proofs of claim filed by Defendants in Plaintiffs' bankruptcy cases were invalid as the Defendants were barred from collecting upon them under the applicable state law statute of limitations.

137.     Defendants were not the valid owners of the underlying debts that were represented as the basis for the Proofs of Claim filed in the Plaintiffs' bankruptcy cases. By placing Jefferson Capital's name on the proof of claim as the "Creditor" or "Person whom Debtor owes money or property" this was

a material misrepresentation, as the Plaintiffs were not the valid owner or assignee of the underlying claims.

138.     Defendants knew or reasonably should have known that there was no legal basis for payment on their unlawful time-barred claims.

139.     Defendants knew or reasonably should have known that they were not the valid owners or assignees of the debts underlying their fraudulent proofs of claim.

140.     Defendants possessed the intent to deceive the bankruptcy court, the Plaintiffs, and the Chapter 13 Bankruptcy Trustees by filing these small proofs of claim en masse as they knew at the time of filing that the Defendants were not lawfully entitled to payment on said proofs of claim, but would likely not be objected to, and therefore filed the proofs of claim with the specific intent to deceive the Plaintiffs in order to receive payment by defeating the provisions of the bankruptcy code.

141.     The Plaintiffs and thousands of other similarly situated individuals have justifiably relied upon the fraudulent misrepresentations made by the Defendants regarding the validity of the Defendants' proofs of claim.

142.     Plaintiffs were justified in relying on the proofs of claim, because Defendants filed the claims and represented themselves as the valid owners with a legal right to collect upon these debts.

143.     But for the Defendants misrepresentations regarding the validity and legal status of the proofs of claim, the Plaintiffs and others similarly situated would not have been deprived of the funds paid to Defendants.

144.     Therefore, Plaintiffs and the other members of the Class have suffered compensable injury proximately caused by the commission of the Defendants' misrepresentations.

*Injury to Plaintiffs in their Business or Property*

145.     Plaintiffs and others similarly situated have been injured and continue to be injured in their business and property as a direct result of Defendants' violations of 18 U.S.C. § 1962(c).   The unlawful action of Defendants have directly and proximately caused and continues to cause injuries to Plaintiffs and other similarly situated individuals in their business and/or property in an amount to be determined according to proof at trial.

## SECOND CAUSE OF ACTION

## CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT
## [CONSPIRACY - 18 U.S.C. § 1962(d)]
[AS TO ALL DEFENDANTS]

146.     Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 145, inclusive, as though fully set forth.

147.     In violation of 18 U.S.C. 1962(d), the Defendants Edwards Capital, CL Holdings, Jefferson Capital, and Jonathan Kirby knowingly, willfully, and unlawfully conspired to facilitate a scheme which included the operation and management of  a RICO enterprise through a pattern of racketeering activity as alleged in paragraphs 1-145 above.

148.     The conspiracy commenced as early as 2012 and is ongoing.

149.     The conspiracy's purpose was to divert money from the Plaintiffs' Chapter 13 bankruptcy estate for their own benefit and to facilitate the filing of time-barred and invalid claims en masse to defraud Bankruptcy Debtors,

the Chapter 13 Trustees, and the Bankruptcy courts into paying the Defendants on fraudulent and/or time-barred proofs of claim.

150.     Each Defendant committed at least one overt act in furtherance of such conspiracy.  These acts in furtherance of the conspiracy included, misleading Plaintiffs as to the true validity of the proofs of claim filed in the aforementioned bankruptcy cases, preparing the invalid proofs of claim, filing the invalid proofs of claim in the Plaintiffs' bankruptcy cases, analyzing statistics regarding the rate of objections, meeting with the other Defendants to plan out the organizational structure of the enterprise, structure the different subsidiary entities of Edwards Capital together to most efficiently mislead the Plaintiffs and other similarly situated bankruptcy debtors, and  accepting payments upon said invalid proofs of claim on behalf of the enterprise.

151.     Defendants have colluded together to file claims en masse in the Plaintiffs' Bankruptcy cases and other bankruptcy courts throughout the United States, for claims that they would not be entitled to collect upon under applicable law.

152.     Defendants have colluded together to create and implement a nationwide system to use the proof of claim system in Chapter 13 cases to fraudulently enrich themselves by seeking out payment on claims they know they are not lawfully entitled to payment upon.  Edwards Capital executives have met with the Chief Executive Officer of Jefferson Capital, David Burton, and officers of CL Holdings, as well as the Director of Jefferson Capital's Bankruptcy Department, Jonathan Kirby and reviewed statistics and rates of objections by bankruptcy debtors regarding time-barred and invalid proofs of claim.  Defendants' executives through multiple communications and meetings with all of the other Defendants have conspired to knowingly file proofs of claim that they do not have a valid

claim to payment upon and/or know are time barred by the non-bankruptcy law applicable statute of limitations.

153.     Upon information and belief, Defendants have prepared and analyzed statistics regarding the rate of objection to these time barred proofs of claim, and through said analysis Defendants know that Debtors and Chapter 13 Trustees rarely object to such claims as it is often not economically feasible given the costs of paying a lawyer to file objections to said proofs of claim. Therefore, based upon the low rate of objections by bankruptcy debtors, Defendants have knowingly colluded together to file time barred a proofs of claim, in order to unjustly receive payment on said claims regardless of the claims' actual validity.

154.     Defendants have no lawful, good faith reason to file claims en masse other than to unjustly enrich themselves via this fraudulent conduct, thus they possess the specific intent to file these invalid proofs of claims in order to acquire multi-million dollars in payments from Chapter 13 bankruptcy debtors throughout the United States.

155.     Defendants have colluded together as part of an enterprise whose purpose is to perpetuate a massive fraud upon thousands of similarly situated bankruptcy debtors throughout the United States, in order to unjustly enrich the Defendants with hundreds of millions of dollars in unlawful claims that Defendants would not have received payment upon but for said conspiracy to knowingly and fraudulently receive material amounts of property from Debtors after the filing of a bankruptcy case, with intent to defeat the provisions of the bankruptcy code.

156.     Even if one of the Defendants did not agree to harm the Plaintiffs specifically, the purpose of the acts they engaged in was to advance the overall object of the conspiracy, and the harm to Plaintiffs was a reasonably foreseeable consequence of Defendants' actions.

157.     Plaintiffs and others similarly situated have been injured and continue to be injured in their business and property by Defendants' conspiracy in violation of 18 U.S.C. § 1962(d).   The unlawful action of Defendants have directly, illegally, and proximately caused and continues to cause injuries to Plaintiffs and others similarly situated in their business or property.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray that judgment be entered against Defendants, and each of them, and that Plaintiffs and the Class members be awarded as follows:

- The action be certified as a Class Action, Plaintiffs be appointed as the representatives of the Class, and Plaintiffs' attorneys be appointed Class counsel;
- Compensatory damages, for a sum duly trebled, plus interest to the Class pursuant to 18 U.S.C. § 1964(c);
- Attorney's fees, together with all costs and expenses pursuant to 18 U.S.C. § 1964(c);
- A temporary, preliminary and/or permanent order for injunctive relief requiring Defendants to: (i) discontinue filing proofs of claim in Chapter 13 bankruptcy cases on time-barred debts or debts they have no interest in; (ii) withdraw all proofs of claim already filed in Chapter 13 bankruptcy cases on time-barred debts or debts they have no interest in; (iii) refuse any payments already processed by Chapter 13 trustees but not yet deposited by Defendants on proofs of claim for time-barred debts or debts they have no interest in;

- Distribution of any monies recovered on behalf of members of the Class via fluid recovery or *cy pres* recovery where necessary and as applicable to prevent Defendants from retaining the benefits of their wrongful conduct;
- Prejudgment and post-judgment interest; and,
- Any and all other relief that this Court deems necessary or appropriate.

Dated: July 26, 2016                    Respectfully submitted,


                                        **HYDE & SWIGART**

                                        By:    /s/ Joshua B. Swigart
                                               Joshua B. Swigart, Esq.
                                               Attorneys for Plaintiffs




## TRIAL BY JURY

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demand, a trial by jury.


Dated: July 26, 2016                    Respectfully submitted,


                                        **HYDE & SWIGART**


                                        By:    /s/    Joshua B. Swigart
                                               Joshua B. Swigart, Esq.
                                               Attorneys for Plaintiffs

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| | |
|---|---|
| **I. (a)  PLAINTIFFS**<br>Martin Matanane; and Bridgett Woods, individually and on behalf of all others similarly situated | **DEFENDANTS**<br>Jefferson Capital Systems, LLC, d/b/a Jefferson Capital International, LLC; Edwards Capital, LLC d/b/a Flexpoint Ford, LLC; CL Holdings, LLC; Jonathan Kirby; and Does 1-50 |
| **(b)**   County of Residence of First Listed Plaintiff    San Diego<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |
| **(c)**   Attorneys *(Firm Name, Address, and Telephone Number)*<br>Joshua B. Swigart, Esq. (SBN: 225557)<br>Hyde & Swigart<br>2221 Camino Del Rio South, Suite 101, San Diego, CA 92108           (619) 233-7770 | Attorneys *(If Known)*<br><br>'16CV1897 DMS MDD |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government
      Plaintiff
- ☒ 3   Federal Question
      *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government
      Defendant
- ☐ 4   Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                      *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>    & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>    Student Loans<br>    (Excludes Veterans)<br>☐ 153 Recovery of Overpayment<br>    of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>    Liability<br>☐ 320 Assault, Libel &<br>    Slander<br>☐ 330 Federal Employers'<br>    Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>    Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>    Product Liability<br>☐ 360 Other Personal<br>    Injury<br>☐ 362 Personal Injury -<br>    Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury -<br>    Product Liability<br>☐ 367 Health Care/<br>    Pharmaceutical<br>    Personal Injury<br>    Product Liability<br>☐ 368 Asbestos Personal<br>    Injury Product<br>    Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>    Property Damage<br>☐ 385 Property Damage<br>    Product Liability | ☐ 625 Drug Related Seizure<br>    of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>    28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☒ 470 Racketeer Influenced and<br>    Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/<br>    Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information<br>    Act<br>☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR**<br>☐ 710 Fair Labor Standards<br>    Act<br>☐ 720 Labor/Management<br>    Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical<br>    Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement<br>    Income Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br>    or Defendant)<br>☐ 871 IRS—Third Party<br>    26 USC 7609 | ☐ 899 Administrative Procedure<br>    Act/Review or Appeal of<br>    Agency Decision<br>☐ 950 Constitutionality of<br>    State Statutes |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>    Accommodations<br>☐ 445 Amer. w/Disabilities -<br>    Employment<br>☐ 446 Amer. w/Disabilities -<br>    Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate<br>    Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee -<br>    Conditions of<br>    Confinement | | | |
| | | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration<br>    Actions | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1   Original
      Proceeding
- ☐ 2   Removed from
      State Court
- ☐ 3   Remanded from
      Appellate Court
- ☐ 4   Reinstated or
      Reopened
- ☐ 5   Transferred from
      Another District
      *(specify)*
- ☐ 6   Multidistrict
      Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. § 1962(c), 18 U.S.C. § 1962(d)
Brief description of cause:
Violations of the Racketeer Influenced and Corrupt Organizations Act

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION**
    UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
5,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

| | |
|---|---|
| DATE<br>07/27/2016 | SIGNATURE OF ATTORNEY OF RECORD<br>s/Joshua B. Swigart |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

| Print | Save As... | | Reset |
|---|---|---|---|

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**    **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**    **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**    **Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.**    **Origin.**  Place an "X" in one of the six boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
When this box is checked, do not check (5) above.

**VI.**    **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.